# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 5, 2005

## STATE OF TENNESSEE v. ROLAND R. SMITH

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-A-600      Steve Dozier, Judge**

---

**No. M2004-01457-CCA-R3-CD - Filed June 29, 2005**

---

The Defendant, Roland R. Smith, was convicted by a jury of nine counts of statutory rape and three counts of especially aggravated sexual exploitation of a minor. The trial court sentenced the Defendant to two years on each of the statutory rape convictions and eleven years on each of the sexual exploitation convictions. The sentences were ordered to be served in such fashion as to result in an effective term of seventeen years in the Department of Correction. In this direct appeal, the Defendant raises the following issues: 1) whether the evidence is sufficient to support certain of his convictions of statutory rape; 2) whether certain of the Defendant's convictions must be reversed under the doctrine of election of offenses; 3) whether certain of the Defendant's convictions violate principles of double jeopardy; 4) whether the trial court erred in refusing to sever some of the offenses; and 5) whether the Defendant's sentence is excessive. We reverse and remand for retrial the Defendant's convictions of statutory rape arising out of Counts Four, Five, Eight and Nine. We reverse and dismiss the Defendant's conviction of statutory rape arising out of Count Six. The Defendant's effective sentence is thereby modified to fifteen years. In all other respects, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part; Reversed in Part; Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J. C. MCLIN, JJ., joined.

Jeffrey A. DeVasher (on appeal) and J. Michael Engle (at trial), Nashville, Tennessee, for the appellant, Roland Richard Smith.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

T.M., the victim of most of the instant crimes,[1] testified that she was born on September 18, 1985. She met the Defendant while she was in the ninth grade; the Defendant was twenty-seven years old at the time. T.M. had been living with her father but ran away to live with the Defendant. The two had been living together approximately two years when the Defendant was arrested in April 2002. At that time, they were living in a house on Carriage Hill in Davidson County, where they had been residing about a year. T.M.'s mother and two younger sisters lived in the house with them for a couple of months around Christmas of 2001. T.M. and the Defendant married on February 14, 2002, after the police began investigating the Defendant's sexual relationship with her.

T.M. testified that she was fifteen years old the first time she had sex with the Defendant. She could not recall where this initial episode occurred. T.M. also stated that, over the course of the period during which she lived with the Defendant, they had sex hundreds of times. She could not remember each and every time but stated that their relations involved both intercourse and oral sex. The Defendant also penetrated T.M. on more than one occasion with a "dildo."

T.M. recalled having intercourse with the Defendant at a Marriott hotel in front of a person named Josh Hildrith "[o]nce or twice." Other witnesses to sexual activity between T.M. and the Defendant included her sister Natasha Meadows, her cousin Lacrisha Taylor, and T.M.'s friends T.H.[2] and Randee Goodwin. T.M. explained that, on one occasion, T.H. was visiting the house on Carriage Drive when the Defendant took both of them into the bedroom. There, he "forced" T.M. and T.H. to have "oral sex with each other." The Defendant watched this activity and also had intercourse with both girls. T.M. testified that she witnessed the Defendant having sex with T.H. and T.H. witnessed the Defendant having sex with T.M. T.H. also witnessed T.M. performing oral sex on the Defendant. T.M. stated that this group scenario repeated itself two or three times.

T.M. testified that Randee Goodwin saw her giving oral sex to the Defendant on one occasion at Carriage Drive. On another occasion, the Defendant forced T.M. to give him oral sex while her sister Natasha was watching. The Defendant threatened to shock T.M. with a Taser gun if she did not do as he requested. This incident also occurred on Carriage Drive. Lacrisha Taylor also witnessed on one occasion T.M. giving oral sex to the Defendant on Carriage Drive.

T.M. acknowledged that, while she and the Defendant lived on Carriage Drive, the Defendant took photographs of her while she was unclothed. One of these photographs was admitted at trial as Exhibit 4. The Defendant also filmed a video of T.M. and T.H. while they were in the shower together, both undressed. The Defendant also filmed a video of himself having sex with T.M. T.M.

---

[1]It is the policy of this Court to refer to the victims of sex crimes by their initials.

[2]T.H. is also the named victim in two counts of statutory rape alleged against the Defendant; hence, we refer to her by her initials.

testified that she recognized both of these videotapes. Both were admitted at trial and played for the jury.

During cross-examination, T.M. maintained that she and the Defendant had fallen in love with each other and that they shared a loving relationship. Their wedding took place at a chapel in Nashville and T.M.'s mother and three sisters attended. T.M. wanted the wedding to take place.

On redirect, T.M. acknowledged that she became pregnant twice during her relationship with the Defendant, miscarrying both times.

T.H. testified that she was born on September 28, 1984, and had known the Defendant eight months prior to her being interviewed by the police about him in January 2002. She lived with the Defendant and T.M. for two months at their house on Carriage Drive. She was seventeen years old at that time. T.H. stated that, while she lived there, she and the Defendant had sexual intercourse four times. She also witnessed the Defendant having intercourse with T.M. She acknowledged that the Defendant filmed her and T.M. together in the shower while they were both unclothed. She also acknowledged participating in sexual activity with T.M. but claimed that she and T.M. did so by mutual choice.

Randee Goodwin, eighteen at the time of her testimony, had been friends with T.M. and the Defendant for several years. She spent two nights with them while they were living in an apartment in Bellevue. Ms. Goodwin stated that, on one occasion, she was in the bedroom with the Defendant and T.M. watching a movie when she saw T.M. performing oral sex on the Defendant. Later on that same night she saw the Defendant sexually penetrating T.M. with a "dildo." Ms. Goodwin was sixteen at the time.

Natasha Meadows, also eighteen at the time of the trial, testified that she witnessed sexual activity between T.M. and the Defendant on "maybe three" occasions. The first time was when she saw T.M. giving oral sex to the Defendant while they were residing in Hermitage. She witnessed this same activity twice more at the Carriage Drive residence.

Kelley Allen, one of T.M.'s younger sisters, was thirteen at the time of the trial. She testified that, when she was eleven or twelve, she lived with her mother for a "few months" at the house that T.M. shared with the Defendant. Her sister Christie also lived there with them. While they were there, T.M. was pregnant but never had the baby. They moved out when the police began an investigation of the Defendant.

Detective Stanley Leo Mitchell testified that he operates the computer forensic lab for the Metro Police Department. He examined a computer recovered from the Defendant's residence. From this computer he recovered the photograph that was admitted as Exhibit Four. This photograph, which is included in the record before us, depicts T.M. lying on her back while undressed with her legs raised and apart, revealing her genital region.

Detective Ken Potter testified that he executed a search warrant at the Defendant's residence at Carriage Drive on January 9, 2002. During that search he seized a computer as well as a digital camera. He also seized a video camera and a number of eight millimeter video cassettes. The police department transferred the material on these cassettes onto VHS videotapes. Portions of two of these videotapes were played for the jury; the tapes are also in the record before us. Det. Potter identified the two female participants in one of the tapes as T.M. and T.H. Det. Potter identified the voice and the person in the other videotape as T.M.

Following Det. Potter's testimony, the State rested its case. The prosecutor then read to the jury the State's election of offenses, as follows:

> In the Criminal Court for Davidson County, Tennessee, Division One, State of Tennessee versus Roland Smith, case number 2002-A-600, election of offenses:
> Count One of the indictment alleges an act of statutory rape involving T.M.,[3] date of birth 9-18-85, and refers to the following conduct:
> The defendant used a dildo to penetrate the vagina of T.M. at the residence on Carriage Drive. Randee Goodwin witnessed this event.
> Count Two of the indictment alleges an act of statutory rape involving T.M., date of birth 9-18-85, and refers to the following conduct:
> T.M. performed an act of fellatio on the defendant at the residence on Carriage Drive. Randee Goodwin witnessed this incident.
> Count Three of the indictment alleges an act of statutory rape involving T.M., date of birth 9-18-85, and refers to the following conduct:
> The defendan[t] had sexual intercourse with T.M. in an apartment in Nashville. This incident was video taped by the defendant.
> Count Four of the indictment alleges an act of statutory rape involving T.M., date of birth 9-18-85, and refers to the following conduct:
> The defendant engaged in sexual intercourse with T.M. at the residence on Carriage Drive. T.M. became pregnant as a result of this incident.
> Count Five of the indictment alleges an act of statutory rape involving T.M., date of birth 9-18-85, and refers to the following conduct:
> T.M. performed an act of fellatio on the defendant at the residence on Carriage Drive. Natasha Meadows witnessed this incident.
> Count Six of the indictment alleges an act of statutory rape involving T.M., date of birth, 9-18-85, and refers to the following conduct:
> The defendant and T.M. engaged in sexual intercourse at the residence on Carriage Drive. T.H. was present and witnessed the act of intercourse.
> Count Seven of the indictment alleges an act of statutory rape involving T.M., date of birth, 9-18-85, and refers to the following conduct:
> The defendant and T.M. engaged in sexual intercourse at the residence on Carriage Drive. T.H. was present and witnessed the act of intercourse.

---

[3] The victims' names are spelled out in the State's election of offenses.

Count Eight of the indictment alleges an act of statutory rape involving T.H., date of birth, 9-28-84, and refers to the following conduct:

The defendant and T.H. engaged in sexual intercourse at the residence on Carriage Drive. T.M. was present and witnessed the act of intercourse.

Count Nine of the indictment alleges . . . an act of statutory rape involving T.H., date of birth, 9-28-84, and refers to the following conduct:

The defendant and T.H. engaged in sexual intercourse at the residence on Carriage Drive. T.M. was present and witnessed the act of intercourse.

Count Ten of the indictment alleges the act of especially aggravated sexual exploitation of a minor and refers to the following conduct:

The defendant photographed T.M. naked on a bed with her legs spread at the Carriage House residence.

Count Eleven of the indictment alleges an act of especially aggravated sexual exploitation of a minor . . . refers to the following conduct:

The defendant video taped T.M. and T.H. in a shower at the Carriage Drive residence.

Count Twelve of the indictment alleges an act of especially aggravated sexual exploitation of a minor and refers to the following conduct:

The defendant video taped he and T.M. engaging in sexual intercourse and T.M. performing an act of fellatio on the defendant.

The Defendant recalled T.M. to the stand and established that she was not afraid of the Defendant with respect to the sexual matters at issue.

After considering the above proof, the jury convicted the Defendant as charged.

## ANALYSIS
### I. Sufficiency of the Evidence

In his first issue the Defendant contends that the evidence is not sufficient to establish that the Defendant committed the statutory rapes charged in Counts One, Two, Four, Five, Six and Seven because the State failed to establish that he and T.M. were not married when those acts took place. Statutory rape is defined as the "sexual penetration of a victim by the defendant or of the defendant by the victim when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least four (4) years older than the victim." Tenn. Code Ann. § 39-13-506(a). However, conduct which would otherwise be statutory rape is not criminal "if the victim is the legal spouse of the perpetrator." Id. § 39-13-507(a). The Defendant contends that the proof at trial established that the Defendant and T.M. were married to one another for approximately six weeks during the time they resided at Carriage Drive, and that the State failed to prove that the acts alleged in the referenced counts occurred prior to that time. Accordingly, the Defendant argues, the State failed to adduce sufficient proof of the criminal nature of the sexual conduct for which the Defendant was charged with statutory rape.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

As pointed out by the State in its brief, T.M. testified about the events charged in Counts One, Two, Five, Six and Seven, and the prosecutor then asked her if she had gotten married "after the police investigation into all these things?" T.M. responded in the affirmative. Obviously, then, "these things" had all occurred prior to the marriage. Count Four alleged a statutory rape based on an act of intercourse that resulted in T.M. becoming pregnant by the Defendant. T.M. testified that she told the Defendant upon her becoming pregnant both times. When the prosecutor asked if the Defendant suggested marriage on either occasion, T.M. testified "he may have once." However, she further testified that the Defendant never took any action toward getting married at that time. This is sufficient proof from which the jury may have drawn the inference that the Defendant and T.M. were not married at the time of the conduct referred to in Count Four.

The proof was therefore sufficient to support the challenged counts of statutory rape. This issue is without merit.

## II. Election of Offenses

The Defendant next challenges the efficacy of the State's election of offenses with respect to all counts of statutory rape except Counts Three, Six and Seven.[4] The State responds both that this issue has been waived, and that it is without merit.

The doctrine of election of offenses is implicated when the State charges a defendant with one or more sexual offenses and then adduces at trial proof of more sexual offenses than have been charged. Under those circumstances our supreme court has long and consistently held that the State must select from among the various offenses proved, those particular acts upon which it seeks convictions. See State v. Johnson, 53 S.W.3d 628, 630 (Tenn. 2001); State v. Kendrick, 38 S.W.3d 566, 568 (Tenn. 2001); State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999); State v. Walton, 958 S.W.2d 724, 727 (Tenn. 1997); Tidwell v. State, 922 S.W.2d 497, 500-01 (Tenn. 1996); State v. Shelton, 851 S.W.2d 134, 136-37 (Tenn. 1993); Burlison v. State, 501 S.W.2d 801, 804 (Tenn. 1973). The Burlison decision cites three reasons for the election requirement:

> First, to enable the defendant to prepare for and make his defense to the specific charge; second, to protect him from double jeopardy by individualization of the issue, and third, so that the jury's verdict may not be a matter of choice between offenses, some jurors convicting on one offense and others, another.

501 S.W.2d at 803. It is the third of these reasons that addresses the most serious concern: "the well-established right under our state constitution to a unanimous jury verdict before a criminal conviction is imposed." Shelton, 851 S.W.2d at 137. This right "requires the trial court to take precautions to ensure that the jury deliberates over the particular charged offense, instead of creating a 'patchwork verdict' based on different offenses in evidence." Id. (emphasis added).

Our supreme court has "stressed that the election requirement is a responsibility of the trial court and the prosecution and, therefore, does not depend on a specific request by the defendant." Kendrick, 38 S.W.3d at 569. More emphatically, our high court in Burlison held that

> it [is] the duty of the trial judge to require the State, at the close of its proof-in-chief, to elect the particular offense of carnal knowledge upon which it would rely for conviction, and to properly instruct the jury so that the verdict of every juror would be united on the one offense.

501 S.W.2d at 804. The defendant's right to a unanimous jury verdict on each and every count is "fundamental, immediately touching the constitutional rights of an accused." Id. As such, any error committed by the trial court in failing to require the State to elect the offenses on which it chooses to seek conviction, or to properly instruct the jury thereon, is reversible unless determined to be harmless beyond a reasonable doubt. See Shelton at 138.

---

[4]These counts allege three incidents of statutory rape occurring when a) the Defendant videotaped himself having sex with T.M., and b) T.H. observed the Defendant having sex with T.M. on two occasions.

We will first address the State's claim of waiver. The State is correct that the Defendant's motion for new trial does not raise an issue regarding the State's election of offenses at trial. However, as set forth above and acknowledged by the State in its brief, the doctrine of election of offenses touches on a criminal defendant's fundamental constitutional rights and is therefore subject to plain error review, whether or not raised in a motion for new trial. See State v. Kendrick, 38 S.W.3d 566, 567 (Tenn. 2001) (reversing conviction under doctrine of election of offenses as plain error although not addressed in the direct appeal); State v. Walton, 958 S.W.2d 724, 726-27 (Tenn. 1997) (reversing convictions as plain error for State's failure to elect offenses, although not raised by the parties); State v. Clabo, 905 S.W.2d 197, 204 (Tenn. Crim. App. 1995) (noting that the State's failure to elect offenses "is plain error").[5] Accordingly, we will address on the merits the Defendant's issues regarding the State's election of offenses.

With respect to Counts One and Two, the Defendant contends that the State's description of the elected offenses "did not sufficiently correspond to [the] proof" and those convictions must therefore be reversed. As to these counts, the State elected those offenses to consist of the following conduct: "the defendant used a dildo to penetrate the vagina of T.M. at the residence on Carriage Drive [while] Randee Goodwin witnessed this event" and "T.M. performed an act of fellatio on the defendant at the residence on Carriage Drive [while] Randee Goodwin witnessed this incident." The Defendant correctly points out that, while Ms. Goodwin testified that she witnessed the Defendant using a dildo on T.M. and also saw T.M. performing oral sex on the Defendant, she stated that she witnessed these events at an apartment in Bellevue. The State's election specifies that these offenses occurred instead at the house on Carriage Drive. Hence, the Defendant asserts, the State's election of offenses as to Counts One and Two does not sufficiently correspond to the proof adduced at trial, requiring the reversal of his convictions on those two counts.

We acknowledge the discrepancy pointed out by the Defendant. We disagree, however, that it is of such magnitude as to require reversal. Ms. Goodwin testified to witnessing two acts of sexual conduct between T.M. and the Defendant. Both occurred on the same evening and in the same location: the Defendant's bedroom. One of the acts witnessed by Ms. Goodwin involved the Defendant penetrating T.M. with a dildo. The other act consisted of T.M. performing fellatio on the Defendant. T.M. also testified that she recalled once performing fellatio on the Defendant in front of Ms. Goodwin, although she stated that this incident occurred at the address on Carriage Drive. T.M. did not recall Ms. Goodwin's presence while the Defendant penetrated her with a dildo.

The Defendant relies on State v. Alfred Lee Middleton, No. W1996-00022-CCA-R3-CD, 1999 WL 1531759, at *8-9 (Tenn. Crim. App., Jackson, Dec. 17, 1999), for the proposition that an

---

[5] We note that, in addressing the election issues in these cases, the courts did not deem it necessary to undertake the analysis set forth in State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994), in order to determine whether the State's failure to properly elect constituted "plain error." We follow their lead.

election that does not correspond to the proof at trial yet results in a conviction, must be reversed.[6] We find Middleton distinguishable from this case. In Middleton, the jury was instructed to consider an alleged rape "wherein the defendant allegedly forced [the victim] to perform fellatio after receiving a whipping." Id. at *8. However, the proof at trial was that the victim performed an act of fellatio in order to avoid a whipping, and on another occasion, refused to fellate the defendant after having already received a whipping. The jury was sufficiently confused that it sent a note to the trial court during deliberations seeking clarification on this very point. The jury was simply told to reread the jury instructions, and eventually convicted on the elected charge.

In the present case, there was proof of only two acts of sexual conduct between the Defendant and T.M. that were witnessed by Ms. Goodwin. Both T.M. and Ms. Goodwin testified about these acts. The address at which these acts occurred was, in the context of this case, relatively unimportant. The differences in the testimony about the Defendant's address at the time did not create the danger of a "patchwork verdict" in which some of the jurors were convicting on the basis of one instance of conduct, and other jurors convicting on the basis of a different instance of conduct. Ms. Goodwin testified that she watched while the Defendant penetrated T.M. on one occasion with a dildo. Ms. Goodwin and T.M. both testified that Ms. Goodwin watched on one occasion while T.M. performed oral sex on the Defendant. Both of these incidents occurred on the same night. The State elected one offense for each of these instances. The jury convicted on each offense. Each elected offense was sufficiently distinct as to render unimportant the address at which these incidents occurred. Unlike the scenario in Middleton, the jury here was not confronted with an offense that appeared to combine elements of proof from two separate incidents and which corresponded to no single described incident. Here, the jury had proof that matched the elected offenses in all respects but the address, a detail which, under the circumstances of this case, is trivial. Accordingly, we find no merit to the Defendant's claim that the State's election as to these offenses was so flawed as to require reversal.

The Defendant also complains about the State's election on Count Four, which the State elected to consist of the Defendant's sexual intercourse with T.M. occurring at the Carriage Drive residence and resulting in her pregnancy. We agree with the Defendant that the State's election on this particular count is flawed. T.M. testified that she twice became pregnant by the Defendant. She did not describe the circumstances surrounding either pregnancy other than to explain that each had terminated in a miscarriage. The State gave the jury no indication in its election as to which pregnancy was the basis for the charge. Obviously, then, some of the jurors might have convicted the Defendant for the act of intercourse that resulted in the first pregnancy, while other jurors may have convicted the Defendant for the subsequent act of intercourse. While we agree with the State that the Defendant could have been prosecuted for both acts, the State chose to prosecute only one.

---

[6]The Defendant also relies upon State v. Brown, 992 S.W.2d 389 (Tenn. 1999). That case is inapposite. There, the defendant was indicted on a single count of rape of a child. The victim testified at trial about five instances of penetration occurring on different days. The State "elected" the offense as occurring "between Easter, April 11, 1993, and June 30, 1993." Id. at 391. Our supreme court held that "[t]his time-frame limitation was not an election and failed to ensure that the jury would focus on a single offense." Id. at 392. In the instant case, the State elected two specific instances of conduct, both occurring on a single night.

Unfortunately, the State did not specify with sufficient detail which act it was prosecuting: and the jury had two from which to choose.[7] This is the very evil against which an election of offenses is designed to protect. See Shelton, 851 S.W.2d at 138 ("the purpose of election is to ensure that each juror is considering the same occurrence"). The protection failed in this instance. Accordingly, we have no choice but to reverse the Defendant's conviction on Count Four and remand that count for a new trial. See Walton, 958 S.W.2d at 728 (defendant's convictions reversed and remanded for new trial where there existed in the record "no means . . . by which [to] be assured that each juror relied upon the same evidence to convict the defendant").

The Defendant attacks his conviction of Count Five on similar grounds. In that count, the State described the relevant conduct as an act of fellatio performed by T.M. on the Defendant at the Carriage Drive residence and witnessed by Natasha Meadows. T.M. testified about a single incident of oral sex observed by Natasha, and described it as being precipitated by the Defendant's threat to shock her with a Taser gun if she did not cooperate. T.M. stated that this incident occurred on Carriage Drive. Natasha testified that she witnessed T.M. giving the Defendant oral sex on at least two occasions at the Carriage Drive address. Both occasions involved the Taser gun. Thus, the jury again had two incidents from which to choose in deciding whether to convict the Defendant of Count Five. As in Count Four, this scenario permitted a "patchwork verdict" as to this count, and the Defendant's conviction of Count Five must therefore be reversed and the charge remanded for a new trial.

The same problem arises with respect to Counts Eight and Nine, each of which the State described as referring to an act of sexual intercourse between the Defendant and T.H. and witnessed by T.M. T.H. testified that she had intercourse with the Defendant on four occasions and that T.M. was present. T.M. testified that she saw the Defendant having intercourse with T.H. "[t]wo or three" times. Thus, the jury had more than two episodes of intercourse between the Defendant and T.H. from which to choose in deciding whether to convict the Defendant on Counts Eight and Nine. The Defendant's convictions on these counts must therefore be reversed and the charges remanded for a new trial.

### III. Double Jeopardy
#### A. Counts Three and Twelve
The Defendant was convicted on Count Three of the statutory rape of T.M. as revealed by the videotape he made of the episode. The Defendant was convicted on Count Twelve of especially aggravated sexual exploitation of a minor based on the fact that he made the videotape relied upon by the State in Count Three. The Defendant now contends that his dual convictions for these offenses violate his constitutional protections against double jeopardy. See U. S. Const. Amend. V; Tenn. Const. Art. I, § 10. We disagree.

---

[7]We also note that the acts of intercourse elected by the State to support Count Six and/or Count Seven could be the same act of intercourse the State elected to support Count Four.

As our supreme court has explained,

three fundamental principles underlie double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense.

State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996) (footnote omitted); see also Whalen v. United States, 445 U.S. 684, 688 (1980). It is the third of these protections that the Defendant contends is being violated. Initially, we note that Tennessee's constitutional protection against double jeopardy has been construed to be greater than that offered by the federal Constitution. See Denton at 378-81; State v. Hayes, 7 S.W.3d 52, 55 (Tenn. Crim. App. 1999).

"The key issue in multiple punishment cases is legislative intent," and we are to presume "that the legislature does not ordinarily intend to punish the same offense under two different statutes." Denton, 938 S.W.2d at 379. According to the Denton decision,

resolution of a double jeopardy punishment issue under the Tennessee Constitution requires the following: (1) a Blockburger[8] analysis of the statutory offenses; (2) an analysis, guided by the principles of Duchac,[9] of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes. None of these steps is determinative; rather the results of each must be weighed and considered in relation to each other.

938 S.W.2d at 381 (footnotes added).

We turn now to the Blockburger analysis of the two crimes in question. That analysis looks to whether each offense requires proof of an additional fact which the other does not. See 284 U.S. at 304. Differing elements indicate that the two offenses are not the same for double jeopardy purposes. Statutory rape is defined as the "sexual penetration of a victim by the defendant . . . when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least four (4) years older than the victim." Tenn. Code Ann. § 39-13-506(a). The crime of especially aggravated sexual exploitation of a minor provides that "[i]t is unlawful for a person to knowingly promote, employ, use, assist, transport or permit a minor to participate in the performance or in the production of material which includes the minor engaging in: (1) Sexual activity; or (2) Simulated sexual activity that is patently offensive." Id. § 39-17-1005(a). Statutory rape requires the element of sexual penetration, which the crime of sexual exploitation of a minor does not. Statutory rape also requires a minimum age difference between the victim and the defendant, not required by the exploitation offense. Especially aggravated sexual exploitation of a minor requires the offender to

---

[8]Blockburger v. United States, 284 U.S. 299 (1932).

[9]Duchac v. State, 505 S.W.2d 237 (Tenn. 1973).

-11-

engage a minor in the performance or production of material depicting sexual activity or simulated sexual activity; statutory rape does not. Thus, under the Blockburger test, these two offenses are not the "same" for double jeopardy purposes.

Turning to the second Denton criterion, we acknowledge that the evidence used to prove these offenses was, indeed, the same. The State relied on T.M.'s testimony and the videotape to prove both crimes. However, the evidence was used for different purposes. In proving the statutory rape, the State was required to offer some corroboration of T.M.'s testimony because she is considered an accomplice to the crime. See State v. McKnight, 900 S.W.2d 36, 48 (Tenn. Crim. App. 1994).[10] The videotape of the sexual intercourse between the Defendant and T.M. was offered to corroborate her testimony as to that act taking place. With respect to the sexual exploitation charge, however, the videotape was offered to prove an element of the crime itself: that the Defendant had produced material depicting a minor engaging in sexual activity.

Duchac instructs that "'[o]ne test of identity of offenses is whether the same evidence is required to prove them. If the same evidence is not required, then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by the statutes.'" 505 S.W.2d at 239 (citation omitted) (emphasis added). In this case, the same evidence was used, but the same evidence was not required. Any form of corroborative evidence would have been sufficient to support the State's charge of statutory rape. On the other hand, the videotape was necessary to the State's case of especially aggravated sexual exploitation of a minor. The differing purposes for which the evidence was offered supports, under the principles of Duchac, a finding that the two offenses are not the same for double jeopardy purposes.

The third factor necessary for us to consider is whether the two offenses involved multiple victims or discrete acts. The nominal victim of both crimes is T.M. However, the offense of statutory rape is included in the chapter of our criminal code titled "Offenses Against Person." The language defining the crime of statutory rape refers to "the victim," clearly implying that there is only one victim of each act of sexual penetration by the defendant. In contrast, the crime of especially aggravated sexual exploitation of a minor is included in the chapter of our criminal code titled "Offenses Against Public Health, Safety, Welfare." That is, this is a crime against society at large. Indeed, the language of the statute itself does not refer to the minor participant as "the victim." Rather, this particular crime is included in Part 10 of the chapter setting forth the crimes against public health, safety and welfare, which part is aimed at punishing "persons involved in child pornography." Tenn. Code Ann. § 39-17-1001, Sentencing Commission Comments. Accordingly, we find that, under the circumstances of this case, the two crimes involved multiple victims.[11]

---

[10]McKnight sets forth the proposition that willing victims of statutory rape are considered accomplices. See 900 S.W.2d at 47-48. Their testimony about the facts constituting the offense must therefore be corroborated. See id. In this case, T.M. testified that she was a willing participant in at least "most" of the sexual conduct she engaged in with the Defendant.

[11]We do not imply that T.M. was not also a victim of the Defendant's sexual exploitation of her.

The two crimes also involved discrete acts. The act supporting the statutory rape charge is the sexual intercourse that occurred between the Defendant and T.M. The act supporting the exploitation charge was the Defendant's videotaping of this act: and the taping of the act would have supported the conviction even if sexual penetration had been merely simulated. Thus, this third factor also supports a finding that the two offenses are not the same for double jeopardy purposes.

A comparison of the purposes of the respective statutes also supports a finding of no double jeopardy violation. As pointed out above, the purpose of the sexual exploitation statute is to punish those involved in child pornography. The purpose of the crime of statutory rape is to punish persons old enough to know better from taking sexual advantage of those deemed too young to effectively consent. The two crimes are aimed at different evils and support separate punishments.

The Defendant points out that the especially aggravated sexual exploitation of a minor statute provides that "[n]othing in this section shall be construed as limiting prosecution under § 39-13-502, for aggravated rape[12] or § 39-13-504, for aggravated sexual battery." Tenn. Code Ann. § 39-17-1005(c). The Defendant argues that this language "reflects a legislative intent to preclude prosecution for statutory rape" because "had the legislature intended that persons convicted of especially aggravated sexual exploitation of a minor face additional prosecution for statutory rape based upon the same factual circumstances, it would have expressly included the offense of statutory rape in [this sentence]." The Defendant relies upon the rule of statutory construction that the mention of one subject in a provision implies the exclusion of those subjects that are not mentioned. See State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991).

While we acknowledge this rule of statutory construction, we conclude that it avails the Defendant no benefit in this case. While the legislature may have envisioned some aspect of the especially aggravated sexual exploitation of a minor statute to have threatened simultaneous prosecution for the rape or sexual battery of a child under the age of thirteen, such that the language at issue was deemed necessary, we see no similar concern with a simultaneous prosecution for statutory rape. That is, we see nothing in section 39-17-1005 that can be construed as limiting prosecution for statutory rape; therefore, a reference to the statutory rape statute in the final sentence of section 39-17-1005 was unnecessary. Its exclusion is, accordingly, immaterial and does not evince a legislative intent that the crimes of statutory rape and especially aggravated sexual exploitation of a minor be considered the "same" for double jeopardy purposes.

The Defendant's claim that his convictions on Counts Three and Twelve violate his protections against double jeopardy is without merit.

---

[12]When the especially aggravated sexual exploitation of a minor statute was enacted in 1990, the referenced statute proscribing aggravated rape contained a provision making the rape of a victim under the age of thirteen "aggravated." See Tenn. Code Ann. § 39-13-502(a)(4) (1991). In 1992, the rape of a victim under the age of thirteen became a crime under a separate statute, codified at Tennessee Code Annotated section 39-13-522. The current statute proscribing aggravated rape no longer contains a provision dealing with victims under the age of thirteen. We surmise that the legislature simply failed to correct the especially aggravated sexual exploitation of a minor statute to reflect the new statute concerning rape of a child.

### B. Counts Six and Seven

The Defendant also contends that his convictions on Counts Six and Seven violate double jeopardy because they constitute multiple punishments for a single offense. The Defendant argues that the State's proof supports only one of these convictions and he asks that we reverse and dismiss one of them, or that we merge the two convictions into a single one. The State argues that the Defendant has waived this issue by failing to include it in his motion for new trial. Given the fundamental constitutional right at issue, we choose to address the Defendant's contention on its merits. See Tenn. R. Crim. P. 52(b).

Counts Six and Seven each refer to an incident of statutory rape occurring on Carriage Drive and consisting of the Defendant having sexual intercourse with T.M. while T.H. was present and watching. T.H. testified that she saw the Defendant and T.M. engaging in intercourse. She did not testify about witnessing more than one instance of this activity. T.M. also testified that T.H. watched while she and the Defendant had intercourse, but was not specific about how many times this occurred.

The Defendant's argument is essentially one of sufficiency. We agree with the Defendant that the State adduced sufficient proof to sustain a single conviction of statutory rape based upon an incident of sexual intercourse between the Defendant and T.M. that was witnessed by T.H. The evidence does not support two convictions of statutory rape based upon two distinct such incidents. Accordingly, we reverse and dismiss the Defendant's conviction on Count Six. We affirm the conviction on Count Seven.

### IV. Severance

The Defendant next contends that the trial court erred in refusing to sever the statutory rape offenses naming T.H. as the victim: Counts Eight and Nine.

The Defendant was originally indicted in an eighteen count True Bill. The first six counts alleged six individual instances of rape of a child involving another victim. The indictment was subsequently amended such that these initial six counts were removed;[13] the remaining twelve counts were renumbered One through Twelve. The first seven of these remaining twelve counts each alleged an instance of statutory rape involving T.M. Renumbered Counts Eight and Nine each alleged an instance of statutory rape involving T.H. Renumbered Counts Ten, Eleven and Twelve each alleged an instance of especially aggravated sexual exploitation of a minor.

After the indictment was amended, the Defendant filed a motion pursuant to Tennessee Rule of Criminal Procedure 14, seeking a severance of the especially aggravated exploitation charges from the remaining ones; of the remaining charges, the Defendant requested to sever six of the statutory rape charges involving T.M. from one of the statutory rape charges involving T.H. The Defendant did not move to sever the two remaining statutory rape charges (Count Seven involving T.M. and Count Nine involving T.H.) based upon the State's representation that those counts involved

---

[13]The State eventually dismissed original counts one through six.

simultaneous contact with both women (a "threesome"). The Defendant later amended his motion at the hearing such that he sought to sever only one of the statutory rape counts involving T.H. After an evidentiary hearing, the trial court denied the Defendant's motion.[14]

We review a trial court's decision on a motion to sever under an abuse of discretion standard. See Spicer v. State, 12 S.W.3d 438, 442 (Tenn. 2000). That is, we will not reverse the trial court's decision unless it applied an incorrect legal standard, or reached a conclusion which is against logic or reasoning and caused an injustice to the complaining party. Id. at 443.

Our Rules of Criminal Procedure provide that, where two or more offenses have been permissively joined, "the defendant shall have a right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others." Tenn. R. Crim. P. 14(b)(1). As explained by our supreme court,

> at its most basic level, a question of severance under Rule 14(b)(1) is really a question of evidentiary relevance. When the other offenses in a common scheme or plan are not relevant to a material issue at trial, then a severance should be granted in order to ensure a fair trial by insulating the defendant from evidence of other unrelated offenses. Otherwise, admission of the other offenses invites the trier of fact to improperly infer that the defendant has a propensity to commit crimes.

State v. Moore, 6 S.W.3d 235, 239 (Tenn. 1999) (citation omitted).

Turning to the trial court's analysis of this case, we first note that offenses may be part of a common scheme or plan in any of three circumstances: (1) the offenses reveal a distinctive design or are so similar as to constitute "signature" crimes; (2) the offenses are part of a larger, continuing plan or conspiracy; or (3) the offenses are all part of the same criminal transaction. See Moore, id. at 240; State v. Shirley, 6 S.W.3d 243, 248 (Tenn. 1999). In this case, the trial court concluded that all of the offenses were part of a larger, continuing plan, stating:

> As the Court understands the State's expected proof in this case, the defendant allegedly has a long-standing habit of preying upon young runaways whom he believes to be vulnerable to his sexual advances. Moreover, due to their age and immaturity the victims he selects are easily persuaded and/or intimidated when it comes to considering activities - such as "threesomes" and videotaped shower activities involving two people of the same sex - in which an older, less-vulnerable woman would be less likely to participate. Given this theory as well as the fact that

---

[14]The Defendant contends on appeal that both of the statutory rape counts involving T.H. should have been severed and that "defense counsel's pretrial reliance on the State's []representation concerning the evidence in count nine should not preclude him from arguing on appeal that both counts involving T.H. as the named victim should have been severed." As eventually elected after the close of the State's proof at trial, Count Nine did not include any allegation of a "threesome." The State does not argue waiver in its brief. Accordingly, we will address on the merits the Defendant's concerns about both Counts Eight and Nine.

-15-

the incidents involving these two victims are so intertwined, the Court finds that the defendant's actions are part of a larger, continuing plan or conspiracy.

The Defendant contends that the evidence does not support this conclusion by the trial court.

At the evidentiary hearing conducted on the Defendant's motion to sever, Detective Potter testified that he investigated the allegations against the Defendant. During the course of the investigation, he learned that T.M. had been residing with the Defendant during periods of time when she was on "runaway status." While she resided with the Defendant, she engaged in sex with him. Det. Potter also interviewed T.H. and learned that she had lived with the Defendant and T.M. for a short period of time during which she was also on runaway status. She engaged in sex with the Defendant during this time.

Det. Potter also learned that, in 1997, the Defendant was living with a "young girl" named Brittany Wilson who was on runaway status. Police recovered from the Defendant's residence a videotape of Ms. Wilson engaging in sexual relations. Det. Potter interviewed the Defendant about his relationship with Ms. Wilson and the Defendant admitted having sex with her.

Det. Potter also interviewed the Defendant's ex-wife, Christa Nichols. Det. Potter testified that Ms. Nichols told him "that she met the defendant when she was thirteen and began a sexual relationship with him at that point." They married when Ms. Nichols was fifteen.

Based upon Det. Potter's testimony, the State established at the hearing on the Defendant's motion to sever[15] that the Defendant had taken in and begun a sexual relationship with four under-age females between 1997 and January 2002 (when the investigation leading to the instant charges was conducted). We disagree with the trial court, however, that this proof was sufficient to establish that the instant offenses were part of a "larger, continuing plan or conspiracy" and therefore parts of a common scheme or plan as contemplated by Rule 14(b)(1).

Our supreme court instructs us that "[a] larger plan or conspiracy in this context contemplates crimes committed in furtherance of a plan that has a readily distinguishable goal, not simply a string of similar offenses." State v. Denton, 149 S.W.3d 1, 15 (Tenn. 2004). Such a plan requires "evidence that the defendant had a working plan operating towards the future such as to make probable the crime with which the defendant is charged." Id. In this case, the evidence indicates that the Defendant has a proclivity for sexual predation upon underage girls, but the proof does not indicate any particular overall goal or plan that the Defendant seeks to realize by his reprehensible conduct, or that makes probable his commission of additional such offenses. The pursuit of sexual

[15]Our supreme court instructs us that, where the State moves pre-trial to consolidate offenses, "because the trial court's decision of whether to consolidate offenses is determined from the evidence presented at the hearing, appellate courts should usually only look to that evidence, along with the trial court's findings of fact and conclusions of law, to determine whether the trial court abused its discretion by improperly joining the offenses." Spicer, 12 S.W.3d at 445. Logic dictates that, on motions to sever, we consider only the evidence presented at that hearing, as well as the trial court's findings of fact and conclusions of law.

gratification alone is not sufficient to satisfy the "common scheme or plan" requirement of Rule 14(b)(1). See id.; Moore, 6 S.W.3d at 240; State v. Hallock, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993). Under the authority of these cases, then, we must conclude that the trial court abused its discretion in finding that the first requirement for denying a severance was satisfied.

We review a trial court's erroneous failure to grant a severance under a harmless error standard. See Denton, 149 S.W.3d at 15; Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b). That is, "the defendant must show that the error probably affected the judgment before reversal is appropriate." Moore, 6 S.W.3d at 242. The line between harmless and prejudicial error in this context is in direct proportion to the extent by which the proof at trial exceeds the standard required to convict. See Denton at 15. "'The more the proof exceeds that which is necessary to support a finding of guilt beyond a reasonable doubt, the less likely it becomes that an error affirmatively affected the outcome of the trial on its merits.'" State v. Toliver, 117 S.W.3d 216, 231 (Tenn. 2003) (quoting State v. Gilliland, 22 S.W.3d 266, 274 (Tenn. 2000)).

In this case, the State's proof as to all of the offenses charged and tried together was undisputed. All of the victim testimony was corroborated. The jury obviously found the witnesses credible. Videotapes and photographs captured on film some of the Defendant's illegal conduct. In short, the State's proof was significantly more than sufficient to establish the charges it levied against the Defendant. Moreover, we conclude that, even had the offenses against T.H. been severed from those against T.M., proof of the offenses against T.H. would have been admissible in the trial of the statutory rape charges involving T.M. As noted above, in proving a case of statutory rape where the victim consented to the sexual penetration, the State must offer corroboration because the victim is considered an accomplice. See McKnight, 900 S.W.2d at 47-48. The State relied on T.H.'s statement that she witnessed the intercourse between T.M. and the Defendant to corroborate T.M.'s testimony about the sexual contact. T.H. was able to corroborate T.M.'s testimony because they were having sex with the Defendant simultaneously. That is, the Defendant and the two victims were having group sex. The circumstances of T.H.'s presence during the statutory rapes of T.M. would have been relevant to her credibility and therefore admissible at trial. Accordingly, we conclude that the Defendant has failed to demonstrate that the joinder of his crimes against T.H. with those he committed against T.M. probably affected to his detriment the jury's verdicts as to the charges against him involving T.M. Therefore, we find that the trial court's error in denying the Defendant's motion to sever was harmless as to the statutory rape counts naming T.M. as the victim. We further find the error harmless as to the exploitation charges.

With respect to the jury's verdict on the statutory rape charges involving T.H., we acknowledge that much of the proof adduced at the Defendant's trial would not have been admissible at a separate trial on the two counts charging the statutory rape of T.H. Accordingly, the potential for harmful error resulting from the denial of a severance is greater as to those two verdicts. However, we have previously determined that the Defendant is entitled to a new trial on these charges because of a flaw in the State's election of offenses. We need not determine, therefore, whether the Defendant is also entitled to a new trial on those two counts on the basis that they should have been severed. We simply caution the trial court that, unless it is given proof different from that

-17-

previously presented to it in opposition to the Defendant's request for a severance, the two counts alleging the statutory rape of T.H. should not be tried together with the remaining counts that we are remanding for retrial.

## V. SENTENCING

The Defendant was convicted of nine counts of statutory rape, a Class E felony. See Tenn. Code Ann. § 39-13-506(c). The Defendant was also convicted of three counts of especially aggravated sexual exploitation of a minor, a Class B felony. See id. § 39-17-1005(c). The trial court sentenced the Defendant as a Range I, standard offender. The Range I sentence for Class E felonies is one to two years. See id. § 40-35-112(a)(5). The Range I sentence for Class B felonies is eight to twelve years. See id. § 40-35-112(a)(2).

After a hearing, the trial court sentenced the Defendant to two years on each of the statutory rape convictions, and to eleven years on each of the exploitation convictions. The court ordered the two year sentences in Counts One, Seven, Eight and the eleven-year sentence in Count Ten to run consecutively to each other, but concurrently with the remaining counts, for an effective term of seventeen years, to be served in the Department of Correction. The Defendant now contends that the trial court erred in applying certain enhancement factors; erred in failing to apply certain mitigating factors; and erred in ordering any of his sentences to be served consecutively. Initially, we note that our disposition of the Defendant's convictions on Counts Four, Five, Six, Eight and Nine reduces the Defendant's effective sentence to a term of fifteen years.

### A. Standard of Review

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under

the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401 Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

### B. Enhancement Factors

The trial court applied two enhancement factors to each of the Defendant's sentences: the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and the Defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. See Tenn. Code Ann. § 40-35-114(2), (9). With respect to the Defendant's three convictions for especially aggravated sexual exploitation of a minor, the trial court also imposed two additional enhancement factors: the offenses involved a victim and were committed to gratify the Defendant's desire for pleasure or excitement, and the Defendant abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or fulfillment of the offense. See id. § 40-35-114(8), (16).

The Defendant does not challenge the trial court's application of enhancement factors (2) and (9). He does challenge the trial court's application of factors (8) and (16). We will first address the Defendant's contentions regarding the United States Supreme Court's recent decision in Blakely v. Washington, 124 S.Ct. 2531 (2004). The Defendant argues that, under Blakely, the trial court erred in applying the latter two enhancement factors to his sentences on the exploitation offenses.

The Blakely decision holds that the Sixth Amendment to the federal Constitution permits a defendant's sentence to be increased only if the enhancement factors relied upon by the judge are based on facts reflected in the jury verdict or admitted by the defendant.[16] See id., 124 S.Ct. at 2537. The only basis upon which enhancement is otherwise permitted is the defendant's previous criminal history: where the defendant has prior convictions, the trial court may enhance the defendant's sentence without an admission or jury finding. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000); Blakely at 2536.

Subsequent to the Defendant's appeal of this case, the Tennessee Supreme Court considered the impact of Blakely on Tennessee's sentencing scheme and concluded that the Criminal Sentencing Reform Act of 1989, pursuant to which the Defendant was sentenced, does not violate a defendant's

---

[16]At the sentencing hearing, the Defendant admitted that he had previously violated the terms of his probation while serving a prior sentence. Hence, the Defendant does not challenge under Blakely the trial court's application of the enhancement factor regarding the Defendant's failure to comply with a sentence involving release in the community.

Sixth Amendment rights. See State v. Edwin Gomez, No. M2002-01209-SC-R11-CD, 2005 WL 856848, at *22 (Tenn. 2005). Accordingly, the Defendant's argument on this basis has no merit.

We turn now to the Defendant's claim that the two challenged enhancement factors should not have been applied in any event. With respect to the trial court's determination that the Defendant committed the exploitation offenses to gratify his desire for pleasure or excitement, the Defendant states that "the State failed to meet its burden of establishing that the offenses in this case were sexually motivated." We beg to differ. The Defendant admitted at the sentencing hearing to taking photographs of at least three minor females while they were engaging in sexual acts. One of the videotapes made by the Defendant and admitted at trial depicts T.M. and T.H. naked in a shower together; during this "performance," T.M. lifts her breasts and shakes them at the camera. The other videotape admitted at trial depicts the Defendant having intercourse with T.M. and T.M. performing fellatio upon the Defendant. The Defendant kept these tapes at his home in reusable condition. They contain explicit and graphic sexual activity with T.M., with whom the Defendant had an ongoing sexual relationship. In describing how he supported himself, the Defendant did not mention that he sold or rented these materials. The trial court was entitled to infer that the Defendant made and kept these photographic materials for his own use and pleasure. The trial court did not err in determining that this enhancement factor applied.

The Defendant also complains that the trial court erred in finding that he abused a position of trust in committing the exploitation offenses. He states in his brief, "the State failed to show both that he occupied a position of trust with respect to the alleged victims, and that he abused such position by commission of the offenses in this case." Again, we disagree.

Our supreme court instructs us that application of this factor

> requires a finding, first, that [the] defendant occupied a position of trust, either public or private. The position of parent, step-parent, babysitter, teacher, coach are but a few obvious examples. The determination of the existence of a position of trust does not depend on the length or formality of the relationship, but upon the nature of the relationship. Thus, the court should look to see whether the offender formally or informally stood in a relationship to the victim that promoted confidence, reliability, or faith. If the evidence supports that finding, then the court must determine whether the position occupied was abused by the commission of the offense.

State v. Kissinger, 922 S.W.2d 482, 488 (Tenn. 1996). We have little difficulty concluding that the Defendant occupied a position of trust with respect to T.M., who was a named victim in each of the three exploitation counts. The Defendant behaved as T.M.'s husband and eventually became such. He provided her with a home and the other necessities of life. She obviously trusted him. The Defendant abused his position of trust with T.M. by using her to create sexually explicit photographic materials, in violation of our statutes prohibiting child pornography. The trial court committed no error in applying this enhancement factor.

### C. Mitigating Factors

The trial court applied as a mitigating factor to all of the Defendant's sentences the fact that his criminal conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113(1). The trial court specifically stated in its sentencing order that it "considered the facts and circumstances surrounding this case in applying each of these mitigating factors and the appropriate sentence in these cases. All remaining mitigating factors were considered and found not to apply." The Defendant now argues that the trial court should have applied the following additional mitigating factors: that substantial grounds exist tending to excuse or justify his conduct; that he was suffering from a mental condition that significantly reduced his culpability for the offense; and that he suffered an "unstable childhood," including "being the victim of sexual abuse." See id. § 40-35-113(3), (8), (13).

In support of his argument that he has substantial grounds tending to excuse or justify his conduct, the Defendant states in his brief that his relationship with T.M. "met with approval from her family, provided her with more emotional stability than she had in her troubled past, and resulted in marriage." We are not persuaded. A parent's misguided approval of the commission of a crime against his or her child does not excuse or justify the offense. The proof at the trial and the sentencing hearing does not support the Defendant's claim that he provided T.M. with "emotional stability." Indeed, the notion that one can "cure" the harm caused by statutory rape and especially aggravated sexual exploitation by subsequently marrying the victim is offensive on its face. The trial court did not err in refusing to apply this factor in mitigation.

The Defendant argues that his mental health problems, including diagnoses of post-traumatic stress disorder, anxiety disorder and bipolar disorder, significantly reduced his culpability for his offenses. However, the Defendant has failed to adduce sufficient proof as to the link between these problems and his reduced culpability. Mental health problems do not automatically reduce one's obligations to conform one's conduct to the law. The trial court did not err in refusing to apply this factor in mitigation.

We are likewise unimpressed with the Defendant's arguments regarding his childhood. One's own abuse does not lessen one's duty not to abuse others. The trial court did not err in refusing to apply this factor in mitigation.

### D. Length of Sentences

Our sentencing statutes provide that the presumptive sentence for B and E felonies is the minimum in the range. See Tenn. Code Ann. § 40-35-210(c). Where there are enhancement and mitigating factors, "the court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, then reduce the sentence within the range as appropriate for the mitigating factors." Id. § 40-35-210(e). In this case, the trial court's balancing of one mitigating and two enhancement factors with respect to the statutory rape convictions resulted in the imposition of the maximum sentence of two years for each of those offenses. We are not persuaded to modify the trial court's ruling on these crimes. With respect to the exploitation offenses, the trial court applied four enhancement factors and a single mitigating

factor, resulting in sentences of one year less than the maximum. We see no error in this result and, accordingly, will not modify it.

### E.  Consecutive Sentences

The trial court ordered three of the statutory rape sentences to run consecutively to each other and to the exploitation sentences, for an effective term of seventeen years (now reduced to fifteen years as the result of our reversal of several convictions). The Defendant contends that the trial court erred in ordering any of his sentences to be served consecutively.

The Criminal Sentencing Reform Act of 1989 permits a trial court to order sentences to run consecutively if it finds by a preponderance of the evidence any of the following seven criteria:

(1) The defendant is a professional criminal who has knowingly devoted [his or her] life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b). The trial court did not indicate upon which of these criteria it was relying in imposing partially consecutive sentences. However, the proof adduced at the trial and sentencing hearing lends support to both criteria numbers (2) and (5). Accordingly, we will review the propriety of the Defendant's consecutive sentences under those provisions.

The presentence report admitted into evidence at the Defendant's sentencing hearing indicates that the Defendant has prior convictions for eight misdemeanors and one felony, which record the Defendant does not dispute. Additionally, the Defendant admitted to using illegal substances. He further admitted to numerous instances of statutory rape involving his first wife. He committed many instances of statutory rape with T.M. for which he was not charged. We have no difficulty concluding that the Defendant's record of criminal activity is extensive.

We also conclude that consecutive sentencing is appropriate under criterion number (5). The aggravating circumstances present in this case include the Defendant's use of a stun gun to force T.M. to perform oral sex on him in front of her sister; his predation upon T.M.'s friends; and his encouraging T.M. to participate in group and homosexual sex with another minor. The Defendant carried on his relationship with T.M. for approximately two years. While the Defendant argues that the sexual activity was not "undetected" because T.M.'s mother was aware of it, the activity went undetected by authorities. T.M.'s mother's failure to safeguard her daughter from the Defendant does not accrue to the Defendant's benefit in this context. The nature and scope of the sexual acts was extensive, including intercourse, fellatio, sex toys, homosexual and group sex. We acknowledge that the State put on no specific proof as to the residual, physical and mental damage to T.M. However, the record demonstrates that this young woman experienced two miscarriages while still very young as a direct result of the Defendant's conduct. Any failure by the State to adduce additional proof on the damage done to T.M. by the Defendant does not overcome the strength of the remaining proof necessary for the application of this criterion. The trial court committed no error in finding that consecutive sentences are proper.

Finally, we look to the overall length of the Defendant's effective sentence in relation to the seriousness of the offenses committed. See Tenn. Code Ann. §§ 40-35-102(1) (the defendant's effective sentence must be "justly deserved in relation to the seriousness of the offense[s]") and 40-35-103(2) (the defendant's effective sentence "should be no greater than that deserved for the offense[s] committed"). Because we have reversed several of the Defendant's convictions, the Defendant's effective sentence has been reduced to fifteen years. Given the Defendant's long history of criminal conduct and the Defendant's utter lack of remorse for his behavior, which is indicative of a reduced potential for rehabilitation, we are confident that the Defendant's effective sentence of fifteen years is appropriate and justified under all of the circumstances of this case. The Defendant is not entitled to relief on the issues he raises with regard to his sentencing.

## CONCLUSION

We reverse and remand for retrial the Defendant's charges of statutory rape against T.M. set forth in Counts Four and Five. We reverse and dismiss the conviction of statutory rape arising under Count Six. We reverse and remand for retrial the Defendant's charges of statutory rape against T.H. set forth in Counts Eight and Nine. The Defendant's effective sentence is thereby reduced to fifteen years. In all other respects, we affirm the judgments of the trial court.

_____
DAVID H. WELLES, JUDGE